IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| VISION BANK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 10-332-CG-M |
| | ) | |
| HARLESS DEVELOPMENT COMPANY | ) | |
| INC., DOUGLAS J. HARLESS and | ) | |
| PAULA H. HARLESS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on plaintiff's motion for partial summary judgment (Doc. 28), defendants' response in opposition (Doc. 34), plaintiff's reply (Doc. 38), defendants' supplemental response in opposition (Doc. 51), plaintiff's supplemental reply (Doc. 60), defendants' motion for partial summary judgment (Doc. 53), plaintiff's response in opposition to defendants' motion (Doc. 61), defendants' reply (Doc. 64), and the motion of SE Property Holding L.L.C. to intervene. For reasons which will be explained below, the court finds that the motion to intervene should be granted. The court further finds that plaintiff's motion for summary judgment is due to be granted as to Counts One, Two, and Five in their entirety and as to Count Four to the extent it seeks an order requiring defendants to quit possession and vacate the Ono Island property. To the extent Count Four seeks additional remedies, the court finds plaintiff's summary judgment

should be denied. The court further finds that defendants' motion for partial summary judgment is due to be denied.

## FACTS

This case arises out of several loan transactions wherein Vision Bank agreed to loan the defendants money pursuant to various promissory notes and guarantees. The complaint asserts claims for: (One) payment of the promissory notes, (Two) payment from the individual defendants, Doug and Paula Harless, under their guarantees, (Three) accounting and inspection, (Four) ejectment with regard to the Ono Island property, and (Five) declaratory judgment stating that defendants have waived their rights of redemption on the Ono Island property. (Doc. 20). Defendants assert counterclaims for: (I) Fraud, (II) breach of contract, (III) breach of constructive trust, (IV) accounting, (V) negligence, and (VI) unlawful foreclosure. (Doc. 16).

On July 18, 2006, Harless Development Company ("HDC") entered into a promissory note pursuant to which Vision Bank loaned HDC $1,965,000.00. (Doc. 20-1; Doc. 29-1, ¶ 3). Doug and Paula Harless personally guaranteed the HDC Note. (Doc. 20-2; Doc. 29-1, ¶ 3).

Doug Harless entered into a promissory note, dated December 6, 2007, pursuant to which Vision Bank loaned him $299,900.00. (Doc. 29-1, ¶ 6, pp. 29-30).

2

Doug and Paula Harless entered into a joint promissory note, dated August 26, 2009, pursuant to which Vision Bank loaned them $665,889.24. (Doc. 29-1, ¶ 4, pp. 23-24).

Doug and Paula Harless entered into a joint promissory note, dated September 5, 2009, pursuant to which Vision Bank loaned them $628,451.38. (Doc. 29-1, ¶ 5, pp. 26-27).

These notes were entered into for the development of The Magnolias subdivision in Fairhope, Alabama, and for the financing of defendants' home. (Doc. 34-1, p. 1). According to Doug Harless, payments were made toward the loans between May 9, 2007, and September 3, 2009, totaling $1,642,674.00 and proceeds totaling $684,759.43 from lots that sold in The Magnolias were paid towards the loans. (Doc. 34-1, pp. 1-2; Doc. 51, pp. 85-86). Defendants also state that they gave a check to Vision Bank on or about May 30, 2008, in the amount of $30,000.00. (Doc. 51, p. 86). Defendants are unable to state with certainty which payments were made on which loan and cannot provide documentation for all of the payments because their records are disorganized due to defendants moving their office and their home. (Doc. 34-1, pp. 1-2). Vision Bank also retained $350,000.00 in escrow for interest payments for the July 18, 2006 loan to HDC. (Doc. 34-1, p. 2; Doc. 51, p. 86). At the end of 2009 or the beginning of 2010, officers from Vision Bank reportedly told Doug Harless that the loans were current. (Doc. 34-1, p. 2).

According to Doug Harless, Vision Bank told him that if he would amend the minimum square footage requirement for the houses, Vision Bank would make construction loans to defendants for homes in The Magnolias subdivision. (Doc. 34-1, p. 2). Defendants reduced the square footage requirements, but that changed the character of the subdivision from upscale homes to a low price range subdivision and devalued the subdivision as a whole. (Doc. 34-1, p. 2). Vision Bank executed a "Consent to Amendment And Re-Ratification of Plat" document on January 1, 2010, as the mortgage holder of the property, acknowledging and consenting to the reduction of the minimum square footage in the covenants for the subdivision. (Doc. 34-3, pp. 3-4). Shortly after the subdivision restrictions were changed, low offers came in for some of the lots. (Doc. 34-1, p. 2). About that same time, Vision Bank informed Doug Harless that he was seven months past due and the bank refused to make any construction loans. (Doc. 34-1, pp. 2-3). According to Doug Harless, shortly thereafter, he received a letter from a lawyer about the debt and foreclosure. (Doc. 34-1, p. 3).

Vision Bank reports that the defendants have defaulted under the Notes by failing to make scheduled payments per the terms of the Notes and that Vision Bank has made a demand on the plaintiffs, but they have not paid. (Doc. 29-1, ¶ 8). Vision Bank foreclosed on a piece of real property located on Ono Island, in Orange

Beach, Alabama, that was pledged as collateral for the Notes and has credited the foreclosure amount to the loans. (Doc. 29-1, ¶ 9; Doc. 29-2).

As of September 14, 2010, the balances owed, including principal, unpaid and accrued interest and late charges, under the Notes were as follows:

| | |
|---|---|
| July 18, 2006 Note to HDC | $628,383.49 |
| December 6, 2007 Note to Doug Harless | $ 71,180.31 |
| August 26, 2009 Note to Paula & Doug | $445,935.90 |
| September 5, 2009 Note to Paula & Doug | $743,264.30 |

(Doc. 29-1, ¶¶ 10-13). The total amount of principal included in the above figures is $1,336,104.42. (Doc. 29-1, ¶¶ 10-13). Attorneys fees and costs are also owed to Vision Bank under the terms of the Notes. (Doc. 29-1, ¶ 14). Vision Bank became the legal owner of the Ono Island property through foreclosure deed executed on September 2, 2010. (Doc. 29-2). On September 3, 2010, Vision Bank sent defendants a letter with copies of the foreclosure deed and demanding that defendants vacate the Ono Island Property and deliver possession to Vision Bank within 10 days. (Doc. 29-1, ¶ 16; Doc. 29-3). On April 29, 2011, Vision Bank conveyed any interest it had in the Ono Island property by Quitclaim Deed to SE Property Holdings, L.L.C. (Doc. 53, pp. 28-30).

## DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on

the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine

issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Summary Judgment Motions**

Vision Bank seeks summary judgment as to Counts One, Two, Four and Five of its Second Amended Complaint which assert the following claims: (One) payment of the promissory notes, (Two) payment from the individual defendants, Doug and Paula Harless, under their guarantees, (Four) ejectment with regard to the Ono Island property, and (Five) declaratory judgment stating that defendants have waived their rights of redemption on the Ono Island property. Defendants move for summary judgment as to Count Four of plaintiff's Second Amended Complaint – the ejectment claim.

**1. Payment of Promissory Notes and Payment Under the Guarantees**

Counts One and Two seek payment of the balance owed on the Notes and pursuant to Doug and Paula Harless' guarantee of the HDC Note. The claims, although not labeled as such, are for breach of contract. Under Alabama law, "[t]o establish a breach-of-contract claim, a plaintiff must show (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." Jones v. Alfa Mut. Ins. Co., 875 So.2d 1189, 1195 (Ala. 2003) (citation omitted). There appears to be no dispute that

8

valid contracts were entered into between the parties. However, defendants dispute the remaining elements of Vision Bank's breach of contract claim.

Defendants contend that the loans are not in default and that Vision Bank has failed to properly apply the payments. Defendants appear to agree that they owe money on the Notes, but believe that the amount is something lower than Vision Bank claims. Defendants have attested to significant payments and property sale proceeds that should have been credited to the loans, but have submitted no documentation to back up their statements and are vague about when or on which loans some of them were made. Defendants have offered no evidence or analysis as to how the payments should have been credited and how they affect the balance of each loan. Vision Bank does not contend that payments were not made, it simply states that it has properly credited them towards the loans. The balance owed on the loans represents a significant reduction in principal – by the court's calculations, the original amounts loaned add up to $3,559,240.62 and the total owed in principal as of September 14, 2010, was $1,336,104.42 for a total decrease in principal of $2,223,136.20. Defendants report that they paid more, but even if they are correct, a significant portion of their payments would have been applied towards interest. There is no evidence that defendants' payments were not credited. Defendants assert that they are not in default because Vision Bank reportedly told defendants they were up to date in late 2009 or early 2010. Even if defendants were not in default in late 2009, that does not

9

mean that they were not in default six or seven months later when this case was filed. Defendants contend that the payments were not applied properly, but have been unable to point to how they were improperly applied. They contend that if properly applied, the October supplemental payment would have kept their account in a current status, and they assert that no evidence in the record refutes their position. This conclusory argument is not sufficient to create a genuine issue of material fact. See Sellers v. GMAC Mortg. Group, Inc., 298 Fed.Appx. 924, (11th Cir. 2008) (finding statement that "if properly applied, the October supplemental payment would have kept his account in a current status" was a conclusory statement that did not raise a material issue of fact as to whether loan was in default (citation omitted)). The court notes that defendants have not even come up with the amounts they believe they owe on the loans. Defendants apparently do not know how much they owe and have offered nothing more than their gut feeling to demonstrate that the amount owed is less than what Vision Bank contends is owed.

Defendants have also asserted that they did not have notice of the default. However, Doug Harless admitted in his affidavit that Vision Bank informed him that he was seven months past due. Additionally, defendants acknowledge the receipt of a letter from an attorney about the debt and the foreclosure action.

Defendants also make much of Vision Bank having agreed to work with defendants on financing for construction of homes in The Magnolias. Defendants are

10

not happy that Vision Bank reportedly required them to reduce the minimum square footage requirement for The Magnolias if they wanted to receive construction loans in the future. However, defendants have not pointed to any way in which these reported negotiations and/or agreements affect the loan or guarantee contracts. Nothing in the Notes or Guarantees required Vision Bank to provide construction loans or to work with defendants on any future financing.

The court finds that there is no genuine issue of material fact with regard to Counts One and Two. Vision Bank has established all of the elements of their breach of contract claims and summary judgment is due to be entered in their favor as to those claims.

**2. Ejectment**

In Count Four, Vision Bank seeks to eject defendants from the Ono Island property. Count Four also requests "compensatory damages, exemplary damages, fair rental value from and after the date of foreclosure through the date Defendants vacate the Ono Property, and attorneys' fees, plus court costs." (Doc. 20, pp. 6-7). Defendants contend that the foreclosure was illegal and improper and should be set aside. Defendants claim that the foreclosure was illegal because Vision Bank did not properly apply payments and because, if Vision Bank had not demanded changes to the restrictive covenants of The Magnolias, the debt on the Ono Island property would have been extinguished and the foreclosure would not have taken place. This court

11

found, above, that defendants have offered insufficient evidence to raise an issue of fact regarding the improper application of payments and that the communications between Vision Bank and defendants regarding the covenant restrictions were not relevant to a determination regarding the parties' obligations under the Promissory Notes. For the same reasons discussed above, the court finds that defendants have not shown that the foreclosure should be set aside.

Defendants also argue that Vision Bank does not have standing to sue for ejectment because it no longer has legal right to possession of the property. On April 29, 2011, after this case was filed, Vision Bank conveyed any interest it had in the Ono Island property by Quitclaim Deed to SE Property Holdings, L.L.C.. Vision Bank asserts that it can prevail on its claim for ejectment by showing that it had legal title to the property when the complaint was filed. In support of this contention, Vision Bank cites Muller v. Seeds, 919 So.2d 1174, 1177 (Ala. 2005), MacMillan Bloedell, Inc. v. Ezell, 475 So.2d 493, 496-497 (Ala. 1985), and Taylor v. Bryars, 602 So.2d 378 (Ala. 1992). However, as defendants point out, while these cases make general pronouncements that a plaintiff must establish legal title at the time of commencement of the action, none of them involve a plaintiff who transferred title after commencement of the case. The cases cited by defendants, on the other hand, hold that the plaintiff must continue to hold title until the time of trial. See Douglass v. Jones, 628 So.2d 940, 941 (Ala.Civ.App. 1993) ("It is a general proposition of law

12

that a prerequisite to recovery in a statutory ejectment action is that it must appear that the plaintiff held title when the suit was commenced and continued to hold title until the time of trial." citing Mid-State Homes, Inc. v. Moore, 460 So.2d 172 (Ala.Civ.App. 1984)). The court agrees that plaintiff must have title to proceed on an ejectment claim.

Vision Bank moves in the alternative for SE Property Holdings, L.L.C. ("SE Property") to intervene in this case as a party plaintiff for the purpose of pursuing the ejectment claim. (Doc. 61, p. 3). There appears to be no dispute that SE Property is the current title holder of the Ono Island Property. Defendants argue that they would need time for discovery with regard to SE Property and that the discovery would delay the case. However, the court disagrees. Since it is undisputed that SE Property is the current title holder and SE Property would simply be stepping into the shoes of Vision Bank, the court sees no reason for discovery. After considering the facts and circumstances of this case, the court finds it appropriate to grant the motion for SE Property to intervene.[1] The court further finds that since SE Property has legal title to the Ono Island property, it is entitled to summary judgment as to its claim for

---

[1] The court presumes that Vision Bank's counsel in moving for SE Property to intervene is doing so on SE Property's behalf. In other words, the court presumes that counsel is representing both Vision Bank and SE Property – which is reportedly a wholly owned subsidiary of Vision Bank's parent company, Park National Corporation. Although the motion was made in a response filed by Vision Bank, counsel states in the response that "SE Property … hereby moves to intervene."

ejectment and that defendants' motion for summary judgment as to Count Four should be denied. However, as mentioned above, Count Four also requests "compensatory damages, exemplary damages, fair rental value from and after the date of foreclosure through the date Defendants vacate the Ono Property, and attorneys' fees, plus court costs." There has been no showing as to these additional claims for relief and thus, summary judgment will be denied to the extent plaintiffs intend to pursue these remedies.

### 3. Redemption Rights

Count Five seeks a declaratory judgment stating that defendants have waived their rights of redemption on the Ono Island property. Alabama Code § 6-5-251 provides that "[t]he possession of the land must be delivered to the purchaser or purchaser's transferees" within 10 days after written demand for the possession has been made by, or on behalf of, the purchasers or purchaser's transferees." ALA. CODE § 6-5-251(a). Section 6-5-251 states that the penalty for failing to deliver possession is forfeiture of the right of redemption. ALA. CODE § 6-5-251(c). Defendants were sent a written demand for possession and failed to deliver possession. The court finds that by failing to deliver possession as required by § 6-5-251, defendants forfeited their right of redemption. Accordingly, summary judgment will be granted in plaintiff's favor with regard to Count Five.

## CONCLUSION

For the reasons stated above, the motion of SE Property Holding, L.L.C. to intervene is **GRANTED**. It is further ordered that plaintiff's motion for partial summary judgment (Doc. 28) is **GRANTED** as to the following:

1. Count One;

2. Count Two;

3. Count Four to the extent that plaintiff's seek an order requiring defendants to quit possession and vacate the Ono Island Property; and

4. Count Five.

Plaintiff's motion for summary judgment is **DENIED** as to Count Four to the extent it seeks compensatory damages, exemplary damages, fair rental value from and after the date of foreclosure through the date defendants vacate the Ono Property, and attorneys' fees.

It is further ordered that defendants' motion for summary judgment as to Count Four (Doc. 53) is **DENIED.**

**DONE and ORDERED** this 5th day of August, 2011.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE